THE ATTORNEY GENERAL,

v.

THE PRESIDENT, DIRECTORS AND COMPANY OF THE
BANK OF NIAGARA.

All questions concerning the possession or forfeiture of chartered rights, belong to the
courts of law, exclusively of the courts of equity.

This court will not sustain a bill in aid of an information, in the nature of a quo war-
ranto, filed in the supreme court.

The exercise of banking privileges without authority, is not a nuisance, in the legal
sense of that word.

The mere omission, by a corporation, to exercise its powers, does not, of itself, work
a forfeiture of its charter.

If a bank should continue its operations while insolvent; or if it should buy up its own
notes at a discount, those circumstances would not authorize the interference of this
court, to restrain the operations of the bank, by injunction.

BY a concurrent resolution of the senate and assembly, at
the present session, the attorney general was directed to issue
such legal proceedings as might be necessary and proper, for
the purpose of dissolving the incorporation of the bank of
Niagara.

The act incorporating this bank, is that of the 39. sess. ch.
167.   The 10th section provides, that, if the bank should
refuse, on demand, to redeem their bills, " the said presi-
" dent, directors and company shall, on pain of forfeiture of
" their charter, wholly discontinue, and close their said bank-
" ing operations, either by way of discount or otherwise, un-
" til such time as the said president, directors and company
" shall resume the redemption of their bills, notes or other evi-
" dences of debt, in specie, or other lawful money of the Uni-
" ted States ; and in case the said president, directors and
" company shall, at any time hereafter, offend against either
" of the provisions of this act, it shall be the duty of the at-
" torney general of this state, by information or otherwise, to
" prosecute the said company for such offence ; and on con-
" viction thereof, their charter shall be deemed void."

In pursuance of the joint resolution, the attorney general
had filed an information, in the nature of a quo warranto in
the supreme court, against the corporation, for the purpose in

effect, of vacating and annulling their charter, by procuring judgment of ouster against them.

The attorney general now filed his bill in this court, for an injunction, to restrain the corporation from issuing notes, receiving deposits, or making discounts, till the further order of the court.

The bill suggested, among other things, that the bank, after being about two years in operation, became, by the neglect, mismanagement or fraud, of some of its officers, wholly insolvent, having a large amount of notes in circulation, which they have neglected to take up ; by means of which, large sums were lost to persons holding notes ; the public confidence in banks impaired ; and much public injury produced. That they have omitted, for four years, to redeem their bills, unless by some secret operation : that the president and directors, by themselves or agents, have lately purchased up their notes at a heavy discount, and threaten to resume banking operations, upon the redemption of their notes, as provided for in the said 10th section ; and that they do this, claiming, that till judgment of forfeiture or ouster, no presumed forfeiture of their righ's, can be made the ground of restraining their operations : that the attorney general has reason to believe, that it is the intention of the defendants to resume banking operations, during the pendency of the information ; by which means, he suggests, that if judgment should be rendered against them, a large amount of their bills will be outstanding, without adequate means of redemption, to the great loss of holders, and great public injury.

THE COURT, on the opening of the cause, stated, that he had looked into the decision of his predecessor, in the case of the attorney general v. the bank of Utica, to the principles of which he should adhere ; and that in consideration of the public importance of this question, he had directed the motion to come on upon notice to the adverse party.

MR. TALCOTT, attorney general. This case differs from the one referred to by the court.

*1825.*

*The ATTORNEY GENERAL v. The BANK OF NIAGARA.*

**1825.**

The ATTORNEY GENERAL
v.
The BANK OF NIAGARA.

In a case of public nuisance this court may interfere; and it was so held, as long ago as the time of queen Elizabeth. Eden on injunct. 162, 3, 8.

The charter of this bank is forfeited by nonuser, as well as by misuser, and the institution being insolvent, it is a public nuisance for them to make use of banking powers.

In the case of the Utica Insurance Company, chancellor Kent relied much upon the circumstance that the relief sought was not in aid of proceedings at law, but was to be final here. This case is not so. We ask for a temporary restraint, till the right can be tried; and that, in case of nuisance, is within the powers of the court. Eden 166, 7, 8. And it would seem, that a part of what chancellor Kent said on this subject, is not supported by the cases. We come to restrain the exercise of a power, which, if exercised, must be of great public detriment, till a trial can be had at law.

Mr. VAN VECHTEN and Mr. E. BALDWIN, for the bank. This application is made by the attorney general, under his general powers. If he has such powers, and if they can be exercised upon allegations so general as the present, it may be of very dangerous consequence.

We allege, 1. that this court has no jurisdiction of this case: 2d. that, till judgment of ouster, the defendants have full right to use the powers granted by their charter.

At common law any person might set up a bank. The statute only, makes it unlawful. If, then, these defendants have set up a bank, in contravention of the statute, it is an offence; and it is an offence committed by them as individuals; and, as such, they must be prosecuted, in a proper court. 2 Kidd on corp. 487. But here they are called upon to answer under their common seal.

An information can only be filed in the supreme court. On conviction there, the charter is to be void. Consequently, till conviction, it is good. The judgment is criminal in its nature, and this court can not try forfeitures. Can it act in anticipation, on the presumption of a forfeiture? Can it presume before ouster, that the defendants have violated a penal statute?

By the constitution, " no member of this state shall be dis- " franchised, except by the law of the land, or the judgment " of his peers." The seventh article of the new constitution has secured all corporate rights ; and the trial by jury is preserved in all cases at common law. But here, it is proposed to seize a franchise, without presentment or trial. How then, if the franchise be seized, and yet the defendant should prevail at law ?

This court can not interfere on the ground of public nuisance, unless there be a special private injury also. 2 John. ch. 371. The case of purprestures is made an exception, because they operate against the property of the crown as well as against the public. 2 Anst. 603.

The fear of future mischief is not a ground for the intervention of this court. Eden inj. 160. Not even in case of nuisance, unless the case be very clear. Ib. 168. And then the court interposes with great reluctance. 18 Ves. 211. 19 Ves. 622. And if it be not on the king's soil, there must be a presentment by a jury.

This court will not grant an injunction in any case of a criminal nature. 6 Mod. 16. 3 Bac. Ab. 648.

The operations of a bank are not of the nature of a public nuisance.

The court will not restrain the exercise of statute rights.

The defendants are in possession under a color of title ; and if it were even a case of waste, the court would not interfere. 2 John. ch. 371. 6 John. ch. 439. 7 John. ch. 162.

The nonuser did not work a forfeiture. The legislature have contemplated and provided for that event, by providing that in case of non payment of their bills, the bank shall discontinue their operations, till they shall resume payment. The inference is, then, inevitable, that by complying with the requisition of the act, they may save the forfeiture. This is what they have done. The bill itself admits they have discontinued their operations, " unless secretly."

The gravamen alleged in the information is too general in its terms : that they failed to take up their bills, through

46

" fraud or neglect." What fraud, or what neglect, does not appear.

Again, the bill is not sufficiently verified. The officer makes the affidavit usual in common cases, that so far as concerns his act the bill is true, and so far as concerns the acts of others he believes it true. But the bill does not concern his own act, at all. It rests then, on the belief of an individual; and that is too slight a ground on which to suspend the exercise of a statute right. Besides, that belief itself refers only to prospective events. It is, that if they resume payments, and if judgment is against them at law, they will have bills out, unredeemed.

The bill is said to be in aid: of what? of an information in the nature of a quo warranto. It is, then, nuisance here, and quo warranto at law : and if the quo warranto fails, the injury here will have been irreparable. It is an injury to which any bank in the state may be subjected, on the mere belief of one person.

The late chancellor could not have intended to say in general terms, that he would grant the injunction in aid of any proceeding at law. He could not have meant a criminal case. The defendants are not bound to answer a bill by which they may subject themselves to a criminal prosecution. 3 John. ch. 45.

THE ATTORNEY GENERAL in reply. The argument of Pollixfen, in the case of the city of London, has been cited to show that an information against a corporation, admits them to be a corporation. This is met by Sawyer's argument, on the other side, and judgment was against the city. The plain sense of the subject is, that they are a corporation de facto, but not de jure, after incurring a forfeiture, and before judgment of ouster.

But here we go, not for a forfeiture of all rights ; but only of the right of carrying on banking operations.

This bill is not to forejudge the defendants ; but to restrain them from the exercise of certain powers, temporarily, and on the principle of quia timet. On that principle, all preventive bills proceed. Now the court can sufficiently see upon the undoubted facts spread upon this bill, that in the event of

a forejudger, the operations of this bank will have been a great public injury.

The case of purprestures does not go, as is alleged, upon the ground of the individual right of the crown. The case of the city of London v. Bott shows that the court may go upon the simple ground of nuisance. There, the lord chancellor said he had often granted similar injunctions : and he granted that, although he thought the powers of the lord mayor embraced the case. Mr. Eden's remark is, p. 162, that the usual and more correct way is, by information by the attorney general : but he goes on to show that on a bill in equity, an injunction will be granted in the case of a public nuisance. He cites the attorney general v. Cleaver, 18 Ves. 211. to show that the jurisdiction was not even doubted in the case of an unhealthy trade : that case too, was in aid of an indictment, and it was much discussed ; and it shows of how little weight is the argument regarding criminal proceedings. The case in 6 John. shows, that the late chancellor would have entertained the cause, had the case itself been proper for relief. He relies much upon the idea, that the bill came not in aid of any other jurisdiction.

But now, the objection is different. They say, this court will not aid an information, and that they can not be compelled to answer. In fact, this bill is in aid of the objects of the other proceeding, and to restrain the defendants ad interim.

There has been much refinement upon the question whether the operations of a bank can be a nuisance. But this is a case compounded of many circumstances ; that the company is insolvent ; that their notes are bought up under par ; and that they intend issuing new notes.

The tenth section of the act does not say that they may stop payment and resume operations at pleasure. It is, that if they continue banking operations after stopping payment, it shall be a forfeiture. But here they are not in full operation. This is not to stop them. They have stopped of themselves.

THE COURT now said, that all the principles which are necessary to be made the foundation of a decision in this case, are decided in the case of the attorney general v. the Utica

1825.

The ATTORNEY GENERAL
v.
The BANK OF NIAGARA.

1st April.

insurance company. In that case, the late chancellor has reviewed all the authorities applicable to the subject. He has shown that all questions concerning the possession or forfeiture of chartered rights, are to be heard and decided in the courts of law, and that this court has never undertaken to examine them. This view of the matter, in which I fully concur, would be sufficient to dispose of the present application.

In the present case, some facts exist, and some points have been urged, which were supposed to distinguish it from the case cited. An information in the nature of a quo warranto, has been actually filed, and is now depending in the supreme court. In the case of the Utica insurance company, no such information was depending. I do not think this to be material. The question whether the corporation has forfeited its franchise or not, is not yet determined ; and that question can be decided only in the supreme court. This court can not interfere in aid of the supreme court. To do so, would be to prejudge the question which is yet to be determined there.

The attempt now made to support the jurisdiction of this court, is founded principally on the resemblance of the acts complained of, to the case of a public nuisance. But this resemblance, if it exists at all, is extremely faint, and the analogy between the two cases, is, in my judgment, far fetched and overstrained. The exercise of banking privileges by the defendants, without authority, though contrary to law, is not a nuisance, within the established sense in which that term is used in the books. It is not necessarily injurious to the public health, convenience or morals. It is therefore unnecessary to decide whether the court would, or would not, interfere, by injunction in the case of a public nuisance. Besides, the carrying on of banking operations, without permission, was not an offence in this state, until the passing of the restraining act. If the defendants have no right, they are merely operating in violation of that act, and can only be punished by the forfeiture, in one course of law, of their corporate franchises, or by prosecution in another, for the specific penalty imposed by the restraining act.

But even if the court had jurisdiction, there is nothing in this case, as presented by the attorney general, to require its

1825.

The ATTORNEY
GENERAL
v.
The BANK OF
NIAGARA.

interposition. This bank was in operation about three years. It then stopped payment, and has neglected to redeem its notes for the last four years. During the whole of that period, it discontinued its business. It has been contended that its corporate privileges have been forfeited by nonuser. This idea is not just. The mere omission by a corporation to exercise its powers, does not of itself, unconnected with other acts, work a forfeiture of its charter. The rule is so laid down, in the English books, and has been repeatedly recognized in our own courts.

1825.

The ATTORNEY GENERAL

v.

The BANK of NIAGARA.

Vide 4 Sandf.Ch.R. 564.

Upon this point, the tenth section of the act of incorporation is also deserving of consideration. It provides, that if at any time after the passing of the act, the bank shall refuse to redeem its notes, the president, directors, and company, shall, on pain of forfeiture of their charter, wholly discontinue and close their banking operations " until such " time as they shall resume the redemption of their bills." The suspension of payment was not a forfeiture, and the subsequent discontinuance of the business of the bank, was not a violation of its charter. On the contrary, the discontinuance was a compliance with the provisions of the act of incorporation.

It was also said, that the bank was insolvent, and that it will be dangerous to the community, to permit it to resume its operations. I am not to understand by this, that the bank is not now able to meet its engagements, because the complaint is, that it is about to resume its business, which can not be done without at the same time paying specie for its notes. I presume, therefore, that by this charge of insolvency, it is only meant to say, that the bank has heretofore been in that condition; and that it continued to be so while its payments were suspended. In that sense, all the banks of this state were insolvent during the late war, as all of them suspended payment; yet it was never supposed that they had thereby forfeited their charters. But even if it were admitted that the bank is still actually insolvent, that fact would not authorise the interference of this court. Its operations may, in that case, be injurious to the public; but this court can not interfere to prevent those operations.

1825.          Again, it is said, that the bank has been engaged in buying
The ATTORNEY   up its own notes at a discount, and has thereby forfeited its
GENERAL        charter.   I do not perceive any thing important in this charge.
The BANK OF    It is not such an act as will work a forfeiture of the charter ;
NIAGARA.       but even if it is, the remedy is in the supreme court.

   Upon the whole, it is very clear, that this court has no juris-
diction to grant the injunction applied for.   It might in some
cases be useful to possess the general power of superintending
the proceedings of our corporate bodies : but that power has
not been given to this court, by any statutory provision ; nor
is there any thing in the English decisions or English histo-
ry, to warrant its application in the present instance.   The
motion for an injunction must therefore be denied.